[Cite as *Gales v. Dept. of Rehab. & Corr.*, 2026-Ohio-2337.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| LACHANDA GALES | Case No. 2025-00893PQ |
| Requester | Special Master Robert Van Schoyck |
| v. | <u>SUPPLEMENTAL REPORT</u> <u>AND RECOMMENDATION</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Respondent | |

{¶1} This case comes before the special master for a supplemental report and recommendation. For the reasons set forth below, it is recommended that the court find that respondent has complied with the judgment entry issued on February 2, 2026, and deny requester's March 5, 2026 "MOTION TO ENFORCE FINAL JUDGMENT, FOR SANCTIONS, AND FOR ORDER TO SHOW CAUSE".

**Background**

{¶2} On October 27, 2025, requester, Lachanda Gales, filed a complaint in this court pursuant to R.C. 2743.75. On December 3, 2025, the special master issued an order bypassing mediation and instructing respondent, Ohio Department of Rehabilitation and Correction (ODRC), to file a response, and if applicable, a motion to dismiss within ten business days. On December 17, 2025, ODRC filed a motion to dismiss.

{¶3} On January 12, 2026, the special master issued a report and recommendation, recommending that the court: (1) Deny ODRC's Motion to Dismiss; (2) Order ODRC to produce all records responsive to Gales's August 10, 2025 request; (3) Order ODRC to take that action within 30 days from the entry of a judgment adopting this report and recommendation; (4) Order ODRC to file and serve an affirmation that it has taken that action within 40 days of the entry of a judgment adopting this report and recommendation; (5) Order ODRC to reimburse Gales for the filing fee and costs in this

case; (6) Order ODRC to pay the balance of the costs in this case; and, (7) Deny all other relief.

{¶4} On February 2, 2026, the court issued a judgment entry in which it adopted the special master's report and recommendation as its own.

{¶5} On March 5, 2026, Gales filed an "AFFIRMATION OF NON-COMPLIANCE AND MOTION TO ENFORCE FINAL JUDGMENT, FOR SANCTIONS, AND FOR ORDER TO SHOW CAUSE", asserting that ODRC had not yet produced any records nor reimbursed Gales for the filing fee and any costs.

{¶6} On March 12, 2026, ODRC filed a "NOTICE OF COMPLIANCE" stating that it "emailed the responsive records to Requester on March 11, 2026" and that it was "in the process of reimbursing Gales with the filing fee and costs of this case . . . ."

{¶7} On March 16, 2026, Gales filed a "supplement" to the document that she filed on March 5, 2026. Therein, Gales asserts that the documents produced by ODRC on March 11, 2026, were "documents she did not request" and that ODRC has still not complied with the orders set forth in the judgment entry issued on February 2, 2026.

{¶8} On March 17, 2026, Gales filed additional documents challenging ODRC's compliance but did not provide proof of service as required by Civ.R. 5.

{¶9} On March 18, 2026, the court remanded this matter to the special master "for a supplemental report and recommendation." The court stated that "[t]he special master may order any additional information or motions to be filed in accordance with R.C. 2743.75(E)(2)-(3)."

{¶10} On April 15, 2026, the special master issued an order setting a schedule for the parties to present evidence and arguments on the question of whether ODRC has complied with the judgment entry issued on February 2, 2026.

{¶11} On April 29, 2026, Gales filed her memorandum in support as directed by the special master, but the certificate of service attached thereto states that it would be served upon counsel for ODRC "via efile system", which is not an acceptable form of service. According to Section X of the court's Administrative Rules Regarding Electronic Filing, "the Filing Party is responsible to serve all filings on all other parties in an e-File case." *See also* L.C.C.R. 4(A)(2)(a) ("The Administrative Rules Regarding Electronic Filing in the Court of Claims, as amended from time to time, governs practice and

procedures to be followed regarding the filing of court documents"). In the absence of proof of proper service as required under Civ.R. 5, documents are not to be considered by the court. *See* Civ.R. 5(B)(4) ("Documents filed with the court shall not be considered until proof of service is endorsed thereon or separately filed."). While it is noted that ODRC asserts that the memorandum in support cannot be considered, as explained below, even if the memorandum in support is considered, Gales does not demonstrate that ODRC failed to comply with the judgment entry issued on February 2, 2026.

{¶12} On May 12, 2026, ODRC filed its memorandum in opposition as directed by the special master.

{¶13} On May 18, 2026, Gales filed a reply and a supplemental affidavit, which shall not be considered because they are not provided for in R.C. 2743.75(E), nor did the special master otherwise direct that they be filed.

{¶14} The matter is now ripe for consideration.

**Analysis**

{¶15} The records request at issue was made by Gales on August 10, 2025, for the following:

(1) "Any reinstatement order or court judgment entry that authorizes J.C. Sanders current imprisonment under Summit County Case No. CR-2022-04-1359";

(2) "All documentation received from any court or prosecutor's office justifying his custody or transport to this facility";

(3) "All intake forms, transfer forms, detainer paperwork, and movement history showing how and why J.C. Sanders was brought into ODRC custody"; and,

(4) "Any correspondence, metadata, or logged activity related to the above." (Complaint, PDF pp. 15-16.)

{¶16} As explained above, ODRC was ordered to produce to Gales all records responsive to this request and to file with the court an affirmation that it did so. There is no dispute that ODRC produced a set of records to Gales on March 11, 2026, and that ODRC filed with the court on March 12, 2026, an affirmation or "Notice of Compliance" of having done so. The records produced by ODRC are identified in a table of contents attached to its Memorandum in Opposition and are attached as exhibits thereto.

{¶17} According to Gales, the records produced by ODRC are "overwhelmingly non-responsive" to her request. (Memorandum in Support, p. 1.) In fact, Gales contends that "[o]f the thirty-six pages produced, only five pages—a Journal Entry from the Summit County Court of Common Pleas—are even arguably responsive, and then only partially so." (*Id.* at p. 2.)

{¶18} According to ODRC, it produced all responsive records in its possession. ODRC asserts that "[t]he produced records directly track the August 10 request's categories, and Requester's mischaracterizations rest on post-hoc narrowing of her own request and a disregard of the plain text she authored on August 10, 2025." (Memorandum in Opposition, p. 7.)

{¶19} There are several ways in which Gales argues that ODRC failed to properly respond to her August 10, 2025 request. For example, the first part of the request sought: "Any reinstatement order or court judgment entry that authorizes J.C. Sanders current imprisonment under Summit County Case No. CR-2022-04-1359". It is undisputed that ODRC produced a sentencing entry from Summit County Common Pleas Court Case No. CR-2022-04-1359, filed on February 10, 2025, sentencing Sanders to a term of imprisonment. (*See* Memorandum in Opposition, Exhibit 4.) According to Gales, the responsive records should include a separate "mittimus" and a separate "commitment order", but ODRC represents that it did not receive any such separate records from the sentencing court and Gales does not demonstrate otherwise. (Memorandum in Support, p. 9; Memorandum in Opposition, p. 7.)

{¶20} Gales further argues that the sentencing entry produced by ODRC does not constitute "a standalone reinstatement order" and insofar as the entry refers to the criminal case being "reinstated", this is "a conclusory statement within the body of the sentencing entry itself, with no separate docket entry, no procedural basis cited, no reference to any applicable rule or statute, and no independent judicial finding supporting reinstatement." (Memorandum in Support, p. 5.) Gales also refers to the sentencing entry as "void". (*Id.*) The record does not demonstrate, however, that ODRC is in possession of a separate "standalone reinstatement order", nor does the Court of Claims have jurisdiction to review any alleged errors in criminal proceedings where there is a

right of appeal in a different court. *See Hamilton v. Ohio Dept. of Rehab. & Corr.*, 2007-Ohio-1173, ¶ 13 (10th Dist.).

{¶21} Gales also argues that "ODRC delivered internal sentence-computation worksheets, DOTS Portal screenshots, and reception-processing forms that bear no relation to what was requested." (Memorandum in Support, p. 1.) But Gales requested "intake forms, transfer forms, detainer paperwork, and movement history showing how and why J.C. Sanders was brought into ODRC custody", as well as "correspondence, metadata, or logged activity related to the above", and as ODRC explains, such records of Sanders' intake or reception at the Lorain Correctional Institution showing how and why he entered ODRC custody, records of Sanders' sentence computation, and records of Sanders' movement history correspond to the requests made by Gales.

{¶22} Regarding the records of Sanders' reception at Lorain Correctional Institution, Gales argues that these "are NOT documents supporting confinement at Lake Erie Correctional Institution", where Sanders is presently incarcerated. (Memorandum in Support, p. 10.) But Gales requested "intake forms, transfer forms, detainer paperwork, and movement history showing how and why J.C. Sanders was brought into ODRC custody", which is what ODRC produced. This request was written in terms of ODRC's custody of Sanders and does not limit the request to records specific to his incarceration at Lake Erie Correctional Institution. Moreover, as ODRC explains, the normal intake process for inmates entering ODRC custody occurs at a reception center such as Lorain Correctional Institution. (Memorandum in Opposition, p. 5.)

{¶23} Gales argues that a copy of Sanders' indictment from the Summit County Common Pleas Court which ODRC produced was not among the records that she requested, but Gales requested "[a]ll documentation received from any court . . . justifying his custody" and "[a]ny correspondence . . . related to the above", and ODRC asserts that the indictment was a document it received from the Summit County Common Pleas Court. More importantly, even if Gales' request were construed as to not encompass the indictment, this does not demonstrate that ODRC failed to comply with the court's February 2, 2026 judgment entry.

{¶24} To the extent Gales argues that ODRC did not produce all responsive records, ODRC asserts that it did produce all responsive records in its possession, and

"a public office has no duty to provide records that do not exist, or that it does not possess." *Viola v. Cuyahoga Cty. Prosecutor's Office*, 2021-Ohio-4210, ¶ 22 (8th Dist.). It is the requester's burden to prove by clear and convincing evidence that any additional record exists and is kept by the public office. *Warchol v. Superintendent of Washington Local School Dist.*, 2022-Ohio-3140, ¶ 14 (Ct. of Cl.), citing *State ex rel. Cordell v. Paden*, 2019-Ohio-1216, ¶ 5-10. Gales has not met that burden. To the extent Gales asserts that ODRC should have certain records from the Summit County Common Pleas Court which ODRC asserts were not transmitted to ODRC, a public office does not have a duty to collect records from other offices in order to respond to a public records request, nor otherwise furnish records not in its possession. *State ex rel. Culgan v. Jefferson Cty. Prosecutor*, 2024-Ohio-4715, ¶ 9.

{¶25} It is noted that in the records that were produced to Gales, ODRC made some limited redactions of inmate information pursuant to "R.C. 5120.21(E) as incarcerated person information, and also in accordance with 42 U.S.C. §3789g and R.C. 109.57(D) as FBI & BCI numbers." (Memorandum in Opposition, p. 6.) The record does not demonstrate any dispute over these redactions.

{¶26} Finally, to the extent that ODRC was ordered to reimburse Gales for the filing fee and costs in this case, ODRC's Memorandum in Opposition provides that it was "in the process of reimbursing the filing fee" at the time the memorandum was filed on May 12, 2026, and ODRC advised "that reimbursement of the filing fee is to be processed on May 13, 2026." (Memorandum in Opposition, p. 4.) ODRC submitted an affidavit from its employee, Kristen DeVenny, Litigation Support Specialist, who avers in part that "the reimbursement request is in action and will be made available to Requester as soon as the request has been processed by the appropriate staff." (DeVenny Affidavit, ¶ 7.) ODRC further relates that it will pay the assessed court costs upon request from the court. (*Id.*)

{¶27} In sum, ODRC produced responsive records in accordance with the court's February 2, 2026 judgment entry and is reimbursing Gales's filing fee as ordered in the February 2, 2026 judgment entry.

**Conclusion**

{¶28} Based upon the foregoing, it is recommended that the court find that ODRC has complied with the judgment entry issued on February 2, 2026, and that the court deny the "MOTION TO ENFORCE FINAL JUDGMENT, FOR SANCTIONS, AND FOR ORDER TO SHOW CAUSE" filed by Gales on March 5, 2026.

{¶29} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

_____
ROBERT VAN SCHOYCK
Special Master

**Filed May 27, 2026**
  **Sent to S.C. Reporter 6/18/26**